IN THE UNITED STATES BANKRUPTYC COURT
FOR THE DISTRICT OF DELAWARE

In re:
ONCURE HOLDINGS, INC., et al.,          Chapter 11
       Debtors.                          Case No. 13-11540 (KG)
                                                Jointly Administered

                                               **Hearing Date:  November 3, 2013 @ 1:30 p.m.**

_____/   **Re:  Dkt. No. 268**

**OBJECTION OF KEPES PARTIES TO THE PLAN OF REORAGNIZAGTION FOR
ONCURE HOLDINGS, INC. AND ITS AFFILIATE DEBTORS UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

       Kathryn L. Kepes, individually, the Center for Radiation Oncology Inc., and Kathryn L.

Kepes, M.D., P.A., (the "**Kepes Parties**"), by and through their undersigned attorneys, files this

Objection to the Plan of Reorganization of OnCure Holdings, Inc. and Its Affiliate Debtors under

Chapter 11 of the Bankruptcy Code (the "**Plan**").   The Kepes Parties object to the Plan in that

the Plan (A) fails to comply with the applicable provisions of Title 11; (B) was not proposed in

good faith; (C) fails to comply with 11 U.S.C. § 1129 (a)(10); (D) fails to identify the persons

proposed to serve after confirmation as officers and directors of the Debtor and its affiliates and

such persons' affiliations; (E) fails to satisfy the provisions of 11 U.S.C. § 1129 (a)(7); and, (F)

fails to satisfy the provisions of 11 U.S.C. § 1129(b)(2).  In support of the Objection, the Kepes

Parties state as follows:

       1.      On June 14, 2013 the Debtor and certain of its subsidiaries filed petitions for

relief pursuant to Chapter 11 of the Bankruptcy Code.

       2.      The Kepes Parties leased (or guaranteed leases) real property to the Debtor or one

or more of its affiliates.  Kathryn L. Kepes address is 4503 Country Gate Court, Valrico, FL

33511; Center for Radiation Oncology Inc. address is 717 W. Robertson Road, Brandon, FL

33511; and Kathryn L. Kepes, M.D., P.A address is 717 W. Robertson Road, Brandon, FL 33511.

3.     The Debtor has filed a notice of intent to reject the leases of the Kepes Parties and the Kepes Parties or leases which were guaranteed by Kathryn Kepes.  The Kepes Parties will have a claim for damages based upon the rejection of the leases.  In the event the Court approves the rejection of the leases, part of the Kepes Parties' claim will be unsecured and part of it will be secured by a lien on personal property that is or was located on the premises for the damages for unpaid rent.

4.     On August 19, 2013, the Debtor filed the Plan (Doc. Nos. 269 and 284). The only classes of creditors who benefit under the Plan are the priority creditors and secured creditors. Under the Plan, Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Tax Claims), and Class 4 (Prepetition Term Loan Claims) are unimpaired.  Class 5 (Prepetition Secured Notes) are impaired and are to receive the Net Cash Amount or the Unused Cash Reserve Amount and their original prepetition secured notes in the approximate principal amount of $210 million shall be deemed allowed but in a reduced amount of approximately $82.5 million.  The remaining classes of creditors (other than the existing equity holders of the subsidiaries), including the Unsecured Creditors *receive nothing*. They **shall not** receive any distribution or retain any property on account of their claims.  (See Doc. No. 284-1, pp. 21-25, 29).

### The Plan Fails to Comply with the Applicable Provisions of Title 11

5.     The Plan is predicated upon the entry of an order substantively consolidating the Estates of HoldCo and each HoldCo Subsidiary solely for the limited purposes of voting and confirmation under the Plan.  For confirmation purposes only, any obligation and guarantee of

HoldCo and any HoldCo Subsidiary shall be treated as a single obligation of HoldCo and one or more of the HoldCo Subsidiaries. All claims shall be deemed to be a single claim against the Consolidated Debtors with the Estate of each being deemed to be a consolidated Estate and all property of each Consolidated Debtor shall be deemed to be property of the consolidated Estates. Except for voting and confirmation purposes, the limited consolidation shall not be deemed to modify or affect the legal or corporate structures of the Debtors or merge the Debtors or cause any Debtor to be liable for any Claim for which it is not otherwise liable.  In short, except for strategic confirmation purposes the substantive consolidation does not have any effect.  Unless the Court approves a limited consolidation prior to the confirmation, the Plan shall be deemed to be a motion for limited substantive consolidation.

6.      The Plan constitutes a "deemed consolidation" under which consolidation is deemed to exist for purposes of voting for or against the plan but would not result in the merger of or the transfer or commingling of any asset of the debtor and the subsidiaries.  The Third Circuit has rejected the use of "deemed consolidation" plans.  *In re Owens Corning*, 419 F.3d 195 (3rd Cir. 2005).  The Court recognized that substantive consolidation is a remedy to be used sparingly. *Id*., at 209.    The Court stated that it was "loathe to entertain the argument that complex corporate families should have an expanded substantive consolidation option in bankruptcy." *Id*., at 215.  Furthermore, substantive consolidation should be used defensively to remedy identifiable harms and not offensively to gain an advantage over a group in the plan negotiation process.  *Id*., at 215.

7.      In *Owens*, the Third Circuit found that the most fatal flaw to the Plan proponent's proposal was that the proposed pretend consolidation was a deemed consolidation.  *Id*. at 215. The court questioned if the debtor's corporate and financial structures were such a sham before

the filing of the motion to consolidate then why after the plan's effective date did the corporate structure stay undisturbed.  The court found it improper that the plan proponents were using substantive consolidation as a stratagem to strip the banks of rights under the bankruptcy code to favor other creditors and trump possible plan objections.  *Id*., at 215.

8.    The Debtor is using substantive consolidation in the OnCare Plan as an offensive procedural device to obtain confirmation and not to remedy problems caused by improper corporate structure and to avoid the standard requirements of substantive consolidation which cannot be established in this case.  The Debtor has not asserted any basis and there is no evidence that the assets and liabilities of the Debtor and its subsidiaries are hopelessly intertwined or that the Debtor and the subsidiaries failed to maintain separate corporate structures.

9.    The Plan constitutes an improper "deemed" substantive consolidation and confirmation should be denied.

**The Plan Was Not Proposed in Good Faith**

10.    The proponents of the Plan are improperly attempting to use a deemed substantive consolidation of the Debtors and its subsidiaries as a strategy to obtain confirmation to the detriment of its creditors, especially unsecured creditors who receive nothing under the Plan.

11.    There has not been any analysis of the independent assets and liabilities of each of the Debtors in this case to demonstrate a basis for substantive consolidation.  By lumping all creditors together in a deemed consolidation, the Debtor is disenfranchising the creditors' ability to evaluate whether a particular plan may be beneficial for one Debtor but not the other.

12.    As previously noted, the Plan only serves to benefit the prepetition secured creditors.  Unsecured Creditors receive nothing.  The Plan is solely to benefit the Secured

Creditors in an attempt to increase the increase the value of their collateral at the expense of the Unsecured Creditors.  Furthermore, neither the Plan nor the Disclosure Statement identify or address potential claims that the Debtor or its subsidiaries may have other than stating all causes of action that may exist as to certain named individuals are preserved.  Neither the Plan nor the Disclosure Statement discusses whether voidance actions may exist or the nature and value of potential claims.  No analysis has been provided on these claims.

13.    Instead, it appears that such claims to the extent they are not released will revert to the Debtors or for the benefit of the secured creditors who may not have a lien on the claims instead of preserving the claims, causes of action, and proceeds for the benefit of Unsecured Creditors.

14.    The failure to preserve the claims, causes of action, and proceeds for the benefit of Unsecured Creditors or to provide a meaningful analysis is contrary to the Debtor's fiduciary duty to the Unsecured Creditors.  A Chapter 7 in a conversion would preserve these possible assets for Unsecured Creditors.

15.    The Plan also provides for overly broad releases and injunctive provisions. Except with respect to actions or claims against the person listed in Schedules 6 and 7, the Plan provides that the Debtors and the Reorganized Debtors shall be deemed to have released each of the Released Parties from any and all Claims, Causes of Action, Litigation Claims and any other kind of debt or obligation whatsoever existing or taking place prior to the Effective Date relating in any way to the Debtors, the subject matter of events giving rise to any Claim or Equity Interest, the business between any of the Debtors and the Released Parties, the purchase or sale of any Equity interest. For example see Art X Sec. B, pp. 49-50.  Released Parties includes the Debtors, Reorganized Debtors, Committee, Prepetition Term Loan Agent and releasing lenders,

Prepetition Secured Note Indenture Trustee and releasing Secured Note Holders, DIP Facility Agent and lenders, Distribution Agents, the Investor, Vestar, Match Point, Genstar, and other Holders of OldCo Interests, *and all of their respective Related Parties*. Related Parties include such person's current and former officers, directors, principles, employees, shareholders etc.

16.     In effect, the Plan releases almost all claims against insiders and other preferred creditors including the secured creditors and other entities that are not providing new value to the Debtors.  The Plan does not provide for a justifiable reason to provide such releases. These releases may act as a release that may be asserted between non-debtors for which there is no jurisdictional basis.  Also, to the extent the Plan proposes to release claims of the Debtors against persons or entities, which may include insiders and voidance actions, there is no analysis or basis to support such a release and there is no consideration for such a release.

## The Plan Fails to Satisfy Section 1129 (a)(10)

17.     The "deemed" substantive consolidation does not alter the corporate structure of the Debtor and its subsidiaries or alter the liability of the claims against them.  Rather, this Plan provision is merely a mechanism to attempt to circumvent the requirements of Section 1129(a)(10).

18.     Absent an actual substantive consolidation, the requirements of Section 1129(a)(10) [that at least one class of impaired creditors must vote for the plan] must be satisfied by each debtor in a joint plan.  *In re Tribune Co.*, 464 B.R. 126, 142  (Bankr. Del. 2011).

19.     There has been no substantive consolidation of the Debtor and its subsidiaries in this case.  The Plan's limited substantive consolidation is merely a mechanism to evade the requirements of Section 1129 (a)(10).  As the court in *Tribune,* supra, stated mere convenience alone is not a sufficient reason to disturb the rights of an impaired class of a debtor not meeting

6

the confirmation standards.  *Tribune*, 464 B.R. at 142.  The requirements of Section 1129(a)(10) must be satisfied per debtor and the Plan as drafted does not make that possible.

**The Plan Fails to Identify the Persons Proposed to Serve After Confirmation as Officers of the Debtor and its Affiliates and the Persons Affiliations**

20.     Pursuant to Section 1129(a)(4), the proponent of the plan must disclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan as a director, officer, or voting trustee of the debtor and that the appointment to such office is consistent with the interests of creditors.  The Code also requires the disclosure of the identity of any insider that will be retained by the reorganized debtor and the nature of any compensation for such insider.

21.     The Debtor states that it will disclose the information prior to the confirmation hearing (Plan. P. 32).  The Kepes Parties object to the extent the Debtors fail to provide such information in sufficient time to evaluate and investigate the information provided.  The Kepes Parties retain the right to assert further objections based upon the persons and information if and once disclosed.

**The Plan Fails to Satisfy the Provisions of 11 U.S.C. § 1129 (a)(7)**

22.     Section 1129 (a)(7) requires that each holder of a claim either accept the plan or receive or retain under the plan on account of the claim property of a value as of the effective date of the plan that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7.

23.     Under the Plan, Unsecured Creditors are deemed to have rejected the Plan and therefore are not entitled to vote against the Plan.  If they were entitled to vote, the Kepes Parties would vote against the Plan and they do NOT accept the Plan.  Also, as previously noted the Unsecured Creditors receive nothing under the Plan.

24.     Under the Plan the reorganized Debtor and not the Unsecured Creditors retains the Causes of Action including any voidance actions. The Plan fails to meet the requirements of

Section 1129(a)(7) because under a Chapter 7 liquidation the Unsecured Creditors would be entitled to the proceeds of any cause of action of the Estate and any avoidance action. Therefore, the Unsecured Creditors would receive more under a Chapter 7 liquidation.

25.     As with Section 1129 (a)(10), the requirements of Section 1129(a)(7) must be satisfied on a per debtor basis and the Plan does not provide for this as it lumps all of the Debtors together for confirmation purposes only.

**The Plan Fails to Satisfy the Provisions of 11 U.S.C. § 1129(b)(2) – the Absolute Priority Rule.**

26.     According to Article V, Sec. P of the Plan, the Old Affiliate Interest shall remain effective and outstanding and shall be owned and held by the same persons that held and/or owned such interest immediately prior to the Effective Date.

27.     Under this provision of the Plan, the equity owners of the subsidiaries retain their interests while Unsecured Creditors receive nothing.

28.     Therefore, the junior class (the Subsidiary equity owners) is retaining property under the Plan on account of such junior interest when the senior class (Unsecured Creditors) is not being paid in full. This violates the absolute priority rule.

29.     Furthermore, the release provisions of the Plan provide a release of claims against the equity interests of the Debtor. See Art X Sec. B and definition of Released Parties. The release in favor of the equity holders was made on account of their interest as equity holders and as such violates the absolute priority rule.

30.     As with Section 1129 (a)(10), the requirements of Section 1129(b)(2) must be satisfied on a per debtor basis and the Plan does not provide for this as it lumps all of the Debtors together for confirmation purposes only.

**The Plan Is Not Fair and Equitable With Respect to Unsecured Creditors**

31.    Section 1129(b)(2) requires that a plan be fair and equitable with respect to a class of creditors.  The Plan is not fair and equitable as to the Unsecured Creditors.  Under the Plan the Unsecured Creditors do not receive any distribution or retain any property.  The Plan is solely to benefit the Secured Creditors in an attempt to increase the value of their collateral at the expense of the Unsecured Creditors.  No Committee of Unsecured Creditors was appointed and to the Kepes Parties knowledge there was little or no participation of Unsecured Creditors in the negotiation of the terms of the Plan.  Any voidance actions or other Causes of Action that may not be subject to liens are not preserved for the Unsecured Creditors.

32.    Furthermore, the Plan provides for releases of non-debtors. A non-consensual release of a non-debtor by other non-debtors is an extraordinary remedy. *Tribune*, 464 B.R. at 178 *citing In re Genesis Health Ventures*, 266 B.R. 581 (Bankr. Del. 2001). The *Genesis* Court "evaluated whether  a non-consensual release fit the "hallmarks" discussed in *Continental* by considering whether: (i) the non-consensual release was necessary to the success of the reorganization, (ii) the releasees have provided a critical financial contribution to the debtor's plan, (iii) the releasees' financial contribution is necessary to make the plan feasible, and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release. *Genesis, 266 B.R. at 607-08*." *Tribune*, 464 B.R. at 178.

33.    There has been no showing of any of these factors to justify any third party releases.

WHEREFORE, the Kepes Parties request the Court enter an order denying confirmation of the Plan, converting the case to a case under Chapter 7, and for such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Richard J. McIntyre*
RICHARD J. McINTYRE
Florida Bar No. 962708
Primary E-Mail:  rich@mcintyrefirm.com
Secondary E-Mail: dana@mcintyrefirm.com
McINTYRE, PANZARELLA, THANASIDES,
    BRINGGOLD & TODD, P.A.
6943 E. Fowler Avenue
Temple Terrace, FL  33617
Tel: 813-899-6059; Fax: 813-899-6069

**THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (# 3995)
824 Market Street, Suite 810
Wilmington, DE 19801
302.777.1111
rosner@teamrosner.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Objection of Kepes Parties To The Plan of Reorganization for Oncure Holdings, Inc. and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* was served on September 24, 2013, upon the registered users of the Courts CM/ECF system and/or via U.S. Mail to:

**Latham & Watkins, LLP**
885 Third Avenue
New York, NY 10022-4834
Attn: Paul E. Harner, Esq.
paul.harner@lw.com
Attn: Keith A. Simon, Esq.
keith.simon@lw.com
Attn: Aaron M. Singer, Esq.
aaron.singer@lw.com
Attn: Annemarie V. Reilly, Esq.
annemarie.reilly@lw.com

**Richards, Layton & Finger, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Attn: Daniel J. DeFranceschi, Esq.
defranceschi@rlf.com
Attn: Paul N. Heath, Esq.
heath@rlf.com
Attn: Tyler D. Semmelman, Esq.
semmelman@rlf.com
William A. Romanowicz, Esq.
romanowicz@rlf.com

**Debtor**
OnCure Holdings, Inc.
188 Inverness Drive West
Suite 650
Englewood, CO  80112

**United States Trustee**
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street
Suite 2207
Wilmington, DE  19801

**Stroock & Stroock & Lavan LLP**
180 Maiden Lane
New York, NY 10038
Attn: Jayme T. Goldstein, Esq.

**Stroock & Stroock & Lavan LLP**
2029 Century Park East
Lost Angles, CA 90067
Attn: Frank Merola, Esq.

**Young Conaway Stargatt & Taylor, LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attn:  Edmon L. Morton, Esq.
        Matthew B. Lunn, Esq.
**Seward & Kissel, LLP**
One Battery Park Plaza
New York, NY 10004
Attn:  John R. Ashmead, Esq.

                                                    */s/ Richard J. McIntyre*
                                                    Attorney