# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------ x
In re:                                           :        Chapter 11
                                                 :
ONCURE HOLDINGS, INC., et al.,                   :        Case No. 13-11540 (KG)
                                                 :
          Debtors.¹                              :        Jointly Administered
                                                 :
------------------------------------------------ x        Re: Docket No. 284
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE PLAN OF REORGANIZATION FOR ONCURE HOLDINGS, INC. AND ITS AFFILIATE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The *Plan of Reorganization for OnCure Holdings, Inc. and its Affiliate Debtors under Chapter 11 of the Bankruptcy Code*, dated August 22, 2013, (as amended, modified or supplemented, the "**Plan**") having been filed with the Bankruptcy Court (the "**Court**") [Docket No. 284] by the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"); and the *Disclosure Statement for the Plan of Reorganization for OnCure Holdings, Inc. and its Affiliate Debtors under Chapter 11 of the Bankruptcy Code*, dated August 22, 2013 (the "**Disclosure Statement**"), having been filed with this Court [Docket No. 284]; and the Disclosure Statement, and appropriate Ballots for voting on the Plan, having been

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: OnCure Holdings, Inc. (1697); Center for Radiation Oncology of Tampa Bay, Inc. (8772); Charlotte Community Radiation Oncology, Inc. (7550); Coastal Oncology, Inc. (6166); Englewood Oncology, Inc. (7072); Fountain Valley & Anaheim Radiation Oncology Centers, Inc. (3999); Interhealth Facility Transport, Inc. (1243); JAXPET, LLC (1932); JAXPET/Positech, L.L.C. (8952); Manatee Radiation Oncology, Inc. (3848); Mica Flo II, Inc. (3431); Mission Viejo Radiation Oncology Medical Group, Inc. (3523); Oncure Medical Corp. (1053); Pointe West Oncology, LLC (4963); Radiation Oncology Center, LLC (8888); Santa Cruz Radiation Oncology Management Corp. (2410); Sarasota County Oncology, Inc. (5920); Sarasota Radiation & Medical Oncology Center, Inc. (4395); U.S. Cancer Care, Inc. (3730); USCC Acquisition Corp. (2679); USCC Florida Acquisition Corp. (0485); USCC Healthcare Management Corp. (6788); and Venice Oncology Center, Inc. (5471). The address for OnCure Holdings, Inc. and certain other Debtors is 188 Inverness Drive West, Suite 650, Englewood, Colorado, 80112.

approved, and transmitted to Holders[2] of Class 5 Claims against the Debtors, pursuant to that certain *Order (A) Approving The Disclosure Statement, (B) Establishing The Voting Record Date, Voting Deadline And Other Dates, (C) Approving Procedures For Soliciting, Receiving And Tabulating Votes On The Plan And For Filing Objections To The Plan And (D) Approving The Manner And Form Of Notice And Other Related Documents*, entered by the Court on August 22, 2013 [Docket No. 285] (the "**Disclosure Statement Order**"); and a copy of the Plan (without Exhibits or Plan Schedules) being attached hereto as <u>Exhibit 1</u>; and the Plan Supplement having been filed on September 13, 2013 [Docket No. 315]; and the Debtors having filed their *Memorandum of Law in Support of Entry of an Order Confirming the Plan of Reorganization for OnCure Holdings, Inc. And its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, with this Court on October 1, 2013 [Docket No. 360] (the "**Confirmation Memorandum**"); and the *Declaration of Bradford C. Burkett in Support of Confirmation of the Debtors' Plan of Reorganization For OnCure Holdings, Inc. and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, by Bradford C. Burkett, President and Chief Executive Officer of HoldCo, having been filed on October 1, 2013 [Docket No. 358]; and the *Declaration of Richard S. Klein in Support of Confirmation of the Debtors' Plan of Reorganization For OnCure Holdings, Inc. and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, by Jefferies LLC, the Debtors' investment banker and financial advisor, having been filed on October 1, 2013 [Docket No. 359]; and the *Declaration of Brendan Hayes in Support of Confirmation of the Debtors' Plan of Reorganization For OnCure Holdings, Inc. and Its Affiliate*

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

*Debtors Under Chapter 11 of the Bankruptcy Code*, by Millstein & Co., LP, investment banker and financial advisor to Radiation Therapy Services, Inc., having been filed on October 2, 2013 [Docket No. 366] (the "**Hayes Declaration**"); and the *Certification Of David M. Sharp With Respect To The Tabulation Of Votes On The Plan Of Reorganization For OnCure Holdings, Inc. And Its Affiliate Debtors Under Chapter 11 Of The Bankruptcy Code*, by Kurtzman Carson Consulting, LLC, the Debtors' Voting and Claims Agent, having been filed on September 30, 2013 [Docket No. 357] (the "**Voting Report**"); and the hearing to consider the Confirmation of the Plan having been held before this Court on October 3, 2013 (the "**Confirmation Hearing**") after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local bankruptcy rules of this Court (the "**Local Rules**"), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "**Notice Affidavits**");[3] and upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the Confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "**Objections**"); (ii) the Plan Supplement; (iii) the Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented at the Confirmation Hearing, (vi) the declarations and/or affidavits filed with this Court; (vii) all other evidence proffered or adduced at, memoranda and objections filed in connection with and arguments of

---

[3] The Notice Affidavits are located at Docket Nos. 155, 188, 197, 248, 252, 264, 280, 281, 299, 300, 304, 307, 320, 332- 336, 342, 344, 351, 367- 369, 371 & 372.

NY\5922797.11RLF1 9422626v.2

counsel made at, the Confirmation Hearing; and (viii) the entire record of the above-captioned chapter 11 cases; and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.    <u>Findings and Conclusions</u>.   The determinations, findings, judgments, decrees, orders and conclusions set forth in this order (the "**Confirmation Order**") and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute a conclusion of law, it is adopted as such.   To the extent any of the following conclusions of law constitutes a finding of fact, it is adopted as such.

B.    <u>Chapter 11 Petition</u>.  On June 14, 2013 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "**Chapter 11 Cases**").  By order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 36].   Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  The United States Trustee (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

C.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157

4

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. The Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) upon which this Court may issue a final order, and confirmation of a plan by this Court is a constitutional exercise of the jurisdiction conferred by Congress on this Court. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

D.    Judicial Notice.  This Court takes judicial notice of (and deems admitted into evidence for Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the Clerk of this Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at, the hearings held before this Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation of the Plan explained on the record at the Confirmation Hearing are hereby incorporated by reference, and any unresolved objections, statements and reservations of rights are hereby overruled on the merits.

E.    Solicitation of Votes.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations. All procedures used to distribute Ballots to the applicable Holders of Claims and to tabulate the Ballots were fair and reasonable and conducted in accordance with the Disclosure Statement

5

Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

F.    <u>Notice of Confirmation Hearing</u>.  The Debtors have given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).  Due, adequate and sufficient notice of the Confirmation Hearing, along with the deadlines for voting on or filing objections to the Plan, has been given to all known Holders of Claims and Equity Interests substantially in accordance with the procedures set forth in the Disclosure Statement Order.  The Disclosure Statement, Plan, Ballots and Disclosure Statement Order were transmitted and served in compliance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.    Such transmittal and service were adequate and sufficient under the circumstances, and no further notice is or shall be required.

G.    <u>Burden of Proof</u>.  The Debtors, as the proponents of the Plan, have met their burden of proving the satisfaction of the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable and qualified to testify as to the topics addressed in his or her testimony.

H.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code, including, without limitation sections 1122 and 1123 of the Bankruptcy Code.

6

(1)      Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1)).  In addition to Administrative Claims, DIP Facility Claims and Priority Tax Claims, which need not be classified, the Plan designates nine Classes of Claims and Equity Interests, based on the differences in the legal nature or priority of such Claims and Equity Interests .  The Claims and Equity Interests placed in each Class are substantially similar to the other Claims or Equity Interests, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes are proper and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)      Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  The Plan specifies that Other Priority Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3), Prepetition Term Loan Claims (Class 4) and Old Affiliate Interests in any HoldCo Subsidiary (Class 9) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code (collectively, the "**Unimpaired Classes**").

(3)      Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  The Plan designates Prepetition Secured Notes Claims (Class 5), General Unsecured Claims (Class 6), Intercompany Claims (Class 7) and Old HoldCo Interests (Class 8) as Impaired and specifies the treatment of the Claims and the Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4)      No Discrimination Within Classes (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5)      Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(6)      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  The Plan provides that the certificate of incorporation of each of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(7)      Selection of Directors and Officers (11 U.S.C. §§ 1123(a)(7) and 1129(a)(5)).  The boards of directors of the Reorganized Debtors were identified by the Debtors at or prior to the Confirmation Hearing.  Pursuant to section 1129(a)(5) of the

7

Bankruptcy Code, the Debtors disclosed, at or prior to the Confirmation Hearing, the identity and affiliations of those Persons (each, a "**New Director**") proposed to serve on the initial boards of directors or as an officer of each of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or an officer, the nature of any compensation for such Person. The directors and officers of the Reorganized Debtors were selected in a manner consistent with the interests of creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code. No action required by the Plan, including, but not limited to, the appointment of the New Directors, shall be, or be deemed to be, a "change of control" under any contract, agreement or other document to which any Debtor is a party or otherwise bound.

(8)    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan contains certain provisions that may be construed as permissive, but are not required for Confirmation under the Bankruptcy Code. These discretionary provisions comply with section 1123(b) of the Bankruptcy Code, are appropriate, in the best interests of the Debtors and their Estates and are not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the assumption or rejection of executory contracts and unexpired leases; (ii) the Reorganized Debtors' retention of certain Litigation Claims that the Debtors had or had power to assert immediately prior to the Effective Date, whether directly or derivatively; (iii) releases and exculpation of various persons and entities; and (iv) the payments contemplated by the Completion Bonus Program.

(9)    Identification of Plan (Bankruptcy Rule 3016(a)). The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of this Court satisfied Bankruptcy Rule 3016(a).

I.    The Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(1)    The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

(2)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126, except as otherwise provided or permitted by orders of this Court.

(3)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement

8

Order in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating votes on the Plan.

J.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).   The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself (and the Plan Supplement) and the formulation and Confirmation of the Plan.   The good faith of each of the Debtors, the Ad Hoc Secured Noteholders Committee, the Prepetition Secured Notes Indenture Trustee and the Investor (and each of their respective Related Persons) is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.   The Debtors, the Ad Hoc Secured Noteholders Committee, the Prepetition Secured Notes Indenture Trustee and the Investor (and each of their respective Related Persons) have negotiated the Plan (and the Plan Supplement) and participated in the Plan (and Plan Supplement) formulation process at arms' length and in good faith.  The Plan itself, and the process leading to its formation, provide independent evidence of good faith of the Debtors, the Ad Hoc Secured Noteholders Committee, the Prepetition Secured Notes Indenture Trustee and the Investor (and each of their respective Related Persons) who negotiated the Plan, serve the public interest, and assure fair treatment of holders of Claims and Equity Interests.  Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtors and maximizing the value of the Debtors' assets.

9

K.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtors or Reorganized Debtors, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

L.     Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after Confirmation of the Plan have been fully disclosed to the extent such information is available. The proposed directors and officers for the Reorganized Debtors are qualified, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Equity Interests in the Debtors and with public policy.  To the extent available, the identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

M.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Debtors are not subject to any governmental regulatory commission with jurisdiction, after Confirmation of the Plan, over the rates of the Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

N.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis set forth in Exhibit D to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing

10

(a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of a Claim or Equity Interest in an Impaired Class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

O.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. The Holders of Other Priority Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3), Prepetition Term Loan Claims (Class 4), and Old Affiliate Interests in any HoldCo Subsidiary (Class 9) are Unimpaired and, thus, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. The Holders of Intercompany Claims (Class 7) are Impaired, but are conclusively deemed to have accepted the Plan because they are Affiliates of the Debtors. The Holders of Prepetition Secured Notes Claims (Class 5) have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. The Holders of General Unsecured Claims (Class 6) and Old HoldCo Interests (Class 8) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to rejecting Classes 6 and 8, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such rejecting Classes. Article IV.E of the Plan contemplates the non-consensual Confirmation of the Plan.

11

P.      Treatment of Administrative Claims, Other Priority Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Claims and Allowed Other Priority Claims under Article II.A and Article III.B.1 of the Plan, respectively, satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Allowed Priority Tax Claims under Article II.C of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code, thereby satisfying section 1129(a)(9) of the Bankruptcy Code.

Q.      Acceptance by At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).  The Prepetition Secured Notes Claims (Class 5) is an Impaired Class of Claims that has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by "insiders," thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

R.      Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered or adduced at or prior to the Confirmation Hearing, including the financial projections set forth in Exhibit C to the Disclosure Statement, the Confirmation Memorandum, the Hayes Declaration, and the Voting Report, (i) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their businesses in the ordinary course and that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to

NY\5922797.11RLF1 9422626v.2

the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

       S.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to <u>Article XII.B</u> of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

       T.      <u>No Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors do not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent such section is applicable to the Debtors, is satisfied.

       U.      <u>Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16))</u>.  The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations, and thus sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

       V.      <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.  The Holders of the General Unsecured Claims (Class 6) and Old HoldCo Interests (Class 8) (collectively, the "**Rejecting Classes**") are deemed to have rejected the Plan.  The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive, credible and accurate as of the dates such evidence was prepared, presented or proffered, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any interest that is junior to the Claims and Equity Interests represented by the respective Rejecting Class will receive or retain any property under the Plan on account of

NY\5922797.11RLF1 9422626v.2

such junior interest, and no Holder of a Claim in a Class senior to the Rejecting Classes is receiving more than 100% recovery on account of its Claim. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Rejecting Classes.

W.    Only One Plan (11 U.S.C. § 1129(c)). Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in the Chapter 11 Cases, and the Plan thereby satisfies the requirements of section 1129(c) of the Bankruptcy Code.

X.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

Y.    Small Business Case (11 U.S.C. § 1129(e)). None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

Z.    Good Faith Solicitation (11 U.S.C. § 1125(e)). The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, (iv) establishes that the Debtors, the Reorganized Debtors and each of their respective Related Persons have, as applicable, (a) solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (b) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-

14

bankruptcy law, rule or regulation in the offer and issuance of any securities under the Plan, and (v) establishes that the Debtors, the Reorganized Debtors and each of their respective Related Persons will, as applicable, continue to act in good faith if they consummate the Plan and the agreements, settlements, transactions and transfers thereby, and take the actions authorized by this Confirmation Order. Accordingly, each of the foregoing Persons is entitled to and, pursuant to paragraph 42 of this Confirmation Order, granted the full protections afforded by section 1125(e) of the Bankruptcy Code.

AA.    Satisfaction of Confirmation Requirements.    Based on the foregoing, all other filed pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

BB.    Implementation of Other Necessary Documents and Agreements.    All documents and agreements necessary or advisable to implement or carry out the Plan, the Restructuring Transactions and the other transactions contemplated by the Restructuring Documents are essential elements of the Plan (including the Plan Supplement) and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests, and shall be valid, binding and enforceable in accordance with their respective terms and conditions. The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's

15

length, are fair and reasonable and are reaffirmed and approved. The Debtors are authorized, without any further notice to or action, order or approval of this Court, to finalize and execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

CC.    <u>Retention of Jurisdiction</u>.  This Court may properly, and upon the Effective Date shall, retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in <u>Article XI</u> of the Plan and as contemplated herein.

DD.    <u>Classification Takes Into Account Subordination Rights</u>.  The classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all contractual, legal and equitable subordination and turnover rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Equity Interest may have against other Holders of a Claim or Equity Interest with respect to any distribution made pursuant to the Plan.

EE.    <u>Additional Findings Regarding Releases</u>.   The releases provided pursuant to <u>Article X.B</u> of the Plan (a) represent a sound exercise of the Debtors' business judgment; (b) were negotiated in good faith and at arms' length; (c) formed a part of the agreement among all the Persons embodied therein; and (d) are: (i) in exchange for good and valuable consideration; (ii) a good faith settlement and compromise of the Claims released thereby; (iii) in the best interest of the Debtors and their Estates and all holders of Claims and Equity Interests; and (iv) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases. The Released Parties played an integral role in the formulation of the Plan and have expended

significant time and resources analyzing and negotiating the Plan and the issues presented by the Debtors' prepetition capital structure.

      FF.    <u>Findings Regarding Limited Substantive Consolidation</u>.  The limited substantive consolidation provisions contained in <u>Article V.A</u> of the Plan are warranted under the circumstances of these Chapter 11 Cases because of, among other things, (i) the high degree of integration of the Debtors' collective business operations; (ii) each and every Debtor being obligated to repay in full in cash, and having granted Liens on substantially all of their assets to secure the repayment of, the obligations arising under the Prepetition Secured Notes Indenture, the Prepetition Term Loan Credit Agreement, and the DIP Facility Credit Agreement; (iii) each and every HoldCo Subsidiary having pledged all of its respective equity interests to secure the repayment in full in cash of the obligations arising under the Prepetition Secured Notes Indenture, the Prepetition Term Loan Credit Agreement, and the DIP Facility Credit Agreement; (iv) the aggregate value of the Debtors being substantially less than the aggregate Face Amount of Claims arising under the Prepetition Secured Notes Indenture, the Prepetition Term Loan Credit Agreement, and the DIP Facility Credit Agreement, which Claims each and every Debtor is liable to repay in full in cash; (v) the Ad Hoc Secured Noteholders Committee consented to such provisions; and (vi) the Plan was overwhelmingly supported by the affirmative vote of the Holders of Prepetition Secured Notes Claims.  Such limited substantive consolidation is solely for purposes of voting and confirmation and shall not affect the legal and organizational structure of the Reorganized Debtors' entities or their separate corporate existence or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, the Plan, any contract, instrument or other agreement or document entered

17

into pursuant to the Plan, or in connection with contracts or leases that were assumed or entered into during the Chapter 11 Cases.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.     <u>Confirmation of the Plan</u>.  All requirements for Confirmation of the Plan have been satisfied.  The Plan is approved and confirmed in its entirety under section 1129 of the Bankruptcy Code.  Each of the terms and conditions of the Plan and the exhibits and schedules thereto, including, without limitation, the Plan Supplement, are an integral part of the Plan and are incorporated by reference into this Confirmation Order.  The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

2.     <u>Objections</u>.  All Objections to Confirmation of the Plan that have not been withdrawn, waived, or settled and all reservations of rights included therein, are overruled on the merits and for the reasons set forth on the record at the Confirmation Hearing.  All withdrawn objections are deemed withdrawn with prejudice.

3.     <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are (i) non-severable and mutually dependent; (ii) valid and enforceable pursuant to their terms; and (iii) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with <u>Article XII.D</u> of the Plan.

4.     <u>Plan Classification Controlling</u>.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms

18

of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Equity Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors, the Reorganized Debtors or holders of Claims or Equity Interests for purposes other than voting on the Plan.

5.      <u>Distributions are Fair</u>.  The distribution of Cash and applicable Plan Securities and Documents to the Holders of Allowed Claims, and the amendment of the Prepetition Secured Notes and the Prepetition Secured Notes Indenture, is fair and for reasonably equivalent value.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  The entry of this Confirmation Order shall constitute this Court's approval of the compromises or settlements of all such Claims, Equity Interests and controversies, as well as a finding by this Court that such compromises or settlements are in the best interest of the Debtors, their Estates and holders of Claims and Equity Interests and are fair, equitable and reasonable.

NY\5922797.11RLF1 9422626v.2

6.    <u>Binding Effect</u>.  Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date and without limiting or altering <u>Article X.H</u> of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtors, (b) all Holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan, (c) the Investor, (d) each Person or Entity receiving, retaining or otherwise acquiring property under the Plan, (e) any non-Debtor party to an Executory Contract or Unexpired Lease with the Debtors, and (f) any Person or Entity making an appearance in the Chapter 11 Cases or any other party-in-interest in these Chapter 11 Cases.

7.    <u>Claims Arising Under the DIP Facility Credit Agreement</u>.  On the Effective Date, the Allowed DIP Facility Claims shall be indefeasibly paid in full in Cash in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Facility Claims.

8.    <u>Corporate Existence</u>.  Subject to the Restructuring Transactions permitted by paragraph 16 of this Confirmation Order, after the Effective Date, the Reorganized Debtors shall, notwithstanding the limited substantive consolidation provided in paragraph 15 of this Confirmation Order, continue to exist as separate legal entities in accordance with the applicable law in the respective jurisdiction in which they are incorporated or formed and pursuant to their respective certificates or articles of incorporation and by-laws, or other applicable organizational documents, in effect immediately prior to the Effective Date, except to the extent such certificates or articles of incorporation and by-laws, or other applicable organizational

20

documents, are amended, restated or otherwise modified under the Plan, and to the extent that such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law). Notwithstanding anything to the contrary herein, the Claims of a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor solely by virtue of the Plan or the Chapter 11 Cases.

    9.    Vesting of Assets in the Reorganized Debtors Free and Clear of Liens and Claims. Except as otherwise expressly provided in the Plan, this Confirmation Order, or any Restructuring Document, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Litigation Claims of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan (other than the Cash Reserves), shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, other than the Liens which survive the occurrence of the Effective Date as described in Article III of the Plan (including, without limitation, the Liens that secure the Amended Secured Notes). On and after the Effective Date, the Reorganized Debtors may (i) operate their respective businesses, (ii) use, acquire, transfer, and dispose of their respective property, and (iii) compromise or settle any Claims, Causes of Action, or Litigation Claims in each case without notice to, hearing before, supervision of or approval by this Court and free and

21

clear of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

10.    <u>Amended Secured Notes; Amended Secured Notes Indenture</u>.  On and as of the Effective Date, the Prepetition Secured Notes Indenture and the Prepetition Secured Notes shall be amended and restated on the terms and conditions set forth in the Amended Secured Notes Indenture and the Amended Secured Notes, respectively, and each of the Collateral Agreements (as defined in the Prepetition Secured Notes Indenture) shall be amended or amended and restated to the extent necessary or advisable in order to implement or carry out the Restructuring Transactions and the other transactions contemplated by the Restructuring Documents (the "**Amended Collateral Agreements**"), and, as such, the Amended Secured Notes, the Guarantees and the Amended Collateral Agreements are deemed to be a continuation and modification of the Prepetition Secured Notes Indenture, the Prepetition Secured Notes and the Collateral Agreements and the obligations thereunder.  The Escrowed Notes will be transferred to the escrow agent under, and be held in escrow pending release to the Holders of the Amended Secured Notes as of record as of December 31, 2013, upon satisfaction of the conditions contained in, the Escrowed Notes Agreement.  Holdco has no right, title or interest (including any beneficial interest) in and to the Escrowed Notes (including, without limitation, any right or power to hold, vote or dispose, or to direct the holding, voting or disposition of, the Escrowed Notes), except for (i) the right to receive interest paid on the principal amount of the Escrowed Notes on or prior to the Specified Date (as defined in the Escrowed Notes Agreement) as contemplated by Section IV(a) of the Escrowed Notes Agreement, and (ii) the right to receive the Escrowed Notes on the terms and subject to the conditions expressly set forth in the Escrowed

Notes Agreement.  On and as of the Effective Date, all of the Prepetition Secured Noteholders shall be deemed to be bound by the Amended Secured Notes Indenture, the Amended Secured Notes Guarantees, the Amended Collateral Agreements and the related Restructuring Documents.

      11.    <u>No New Issuance of Debt</u>.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Amended Secured Notes will represent a portion of the same indebtedness as the Prepetition Secured Notes, and nothing in the Plan or this Confirmation Order is, or shall be deemed to constitute, an issuance of new indebtedness under or in connection with the Amended Secured Notes or the Amended Secured Notes Indenture.  Except as expressly amended or modified by the Plan or this Confirmation Order, the Prepetition Secured Notes Indenture and all Collateral Agreements shall remain in full force and effect and shall, in their original form and as amended or modified pursuant to this Confirmation Order, the Plan or the applicable Restructuring Document, or as otherwise necessary to implement or carry out the Restructuring Transactions and the other transactions contemplated by the Restructuring Documents, secure the obligations and indebtedness under or in connection with the Amended Secured Notes, and, at the written request of the Prepetition Secured Notes Indenture Trustee, the Reorganized Debtors shall execute and deliver conforming amendments to such documents necessary in order to implement the same, all without further notice to or order of this Court. The Prepetition Secured Notes Indenture Trustee and any applicable Distribution Agent shall, and the Debtors and/or Reorganized Debtors and their agents shall be authorized to, coordinate with DTC such that certain allocations of the Amended Secured Notes shall be made by means of

book-entry exchange through the facilities of the DTC in accordance with the customary practices of the DTC.

12.    <u>No Discharge or Release of Liens Securing the Prepetition Secured Notes Claims</u>. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, all property of the Estates of the Debtors, including all claims, rights and causes of action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with the Plan, shall remain encumbered by and subject to the Liens securing the Prepetition Secured Notes Claims which, as of the Effective Date, secure the obligations and indebtedness under or in connection with the Amended Secured Notes, and such Liens shall not be, and shall not be deemed to be, discharged or released on account of the Confirmation or Consummation of the Plan.

13.    <u>Release of Liens, Claims and Equity Interests</u>.  Except as otherwise provided in this Confirmation Order, the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  This release, termination, extinguishment and discharge is necessary to implement the Plan and is appropriate, fair, equitable and reasonable and in the best interest of the Debtors, their Estates and holders of Claims and Equity Interests.  The filing of this Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be

24

required to effect, the termination of such Liens, Claims and other interests described above. Any Entity holding such Liens or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

14.    New Common Stock.  On the Effective Date, subject to the terms and conditions of the Investment Agreement, Reorganized HoldCo shall issue 100% of the New Common Stock to the Investor or its designated Affiliate pursuant to the Amended/New Organizational Documents in consideration for the Purchase Price.  The Reorganized Debtors shall not be obligated to register the New Common Stock under the Securities Act or to list the New Common Stock for public trading on any securities exchange.  Distributions of the New Common Stock may be made by delivery or book-entry transfer thereof by the applicable Distribution Agent in accordance with the Investment Agreement.  Upon the Effective Date, after giving effect to the transactions contemplated by the Plan, this Confirmation Order and the Restructuring Documents, the authorized capital stock or other equity securities of Reorganized HoldCo shall be that number of shares of New Common Stock as may be designated in the Amended/New Organizational Documents.

15.    Limited Substantive Consolidation.  The substantive consolidation of the Estates of HoldCo and each HoldCo Subsidiary is hereby approved solely for the limited purposes of voting and confirmation, as described in Article V.A of the Plan, subject to the terms and conditions set forth therein and in this Confirmation Order.

16. Restructuring Transactions. On the Effective Date, the applicable Debtors or Reorganized Debtors are authorized to consummate the Restructuring Transactions described in Article V.B of the Plan, subject to the terms and conditions set forth therein, in this Confirmation Order and in the Restructuring Documents.

17. Noteholders' Representative. The appointment of GLC Advisors & Co., LLC ("**GLC**") as the Noteholders' Representative is approved, and the Noteholders' Representative is authorized and empowered to act as of the Effective Date as agent, proxy, attorney-in-fact and representative for and on behalf of all Prepetition Secured Noteholders as described in Article V.T of the Plan, subject to the terms and conditions set forth therein, in this Confirmation Order and in the Restructuring Documents, and all the provisions thereof are hereby approved. GLC, in its capacity as the Noteholders' Representative, will be compensated at a rate of $62,500.00 per month, subject to an aggregate cap of $250,000.00. On the Effective Date, the Noteholders' Representative Cash Reserve shall be funded in the amount of $500,000.00 in accordance with the Plan and this Confirmation Order. The reimbursement of reasonable costs and expenses of the Noteholders' Representative, including, without limitation, GLC, in its capacity as the Noteholders' Representative, and any professionals retained by the Noteholders' Representative, shall be made from the Noteholders' Representative Cash Reserve. The payment of such amounts to GLC, in its capacity as the Noteholders' Representative, and its retained professionals shall be made in the ordinary course of business with the consent of the Supermajority Consenting Debtholders and shall not be subject to the approval of this Court; provided, however, that any disputes related to such fees, costs and expenses shall be brought before this Court.

18.    <u>Distributions Exempt from Securities Laws</u>.

(a)    On and after the Effective Date, the Debtors, the Reorganized Debtors, the Investor and their respective Affiliates are each authorized to and shall provide or issue, as applicable, the Plan Securities and Documents, in each case in form and substance satisfactory to the Supermajority Consenting Debtholders, the Investor, and to the extent it is a signatory thereto, in form and substance reasonably satisfactory to the Prepetition Secured Notes Indenture Trustee, and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(b)    The distribution and issuance, as applicable, of the Plan Securities and Documents under the Plan shall be exempt from registration and prospectus delivery requirements under applicable securities laws (including Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(2) of the Securities Act and/or other applicable exemptions.  An offering of Plan Securities provided in reliance on the exemption from registration under the Securities Act pursuant to section 1145(a) of the Bankruptcy Code may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code and is deemed to be a public offering, and such Plan Securities may be resold without registration to the extent permitted under section 1145 of the Bankruptcy Code.  Any Plan Securities and Documents provided in reliance on the exemption from registration under the Securities Act provided by Section 4(2) of such act will be provided in a private placement.

NY\5922797.11RLF1 9422626v.2

(c)     Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

19.     Discharge of the Debtors.

(a)     To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their respective assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests or Causes of Action.

(b)     Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the

28

Bankruptcy Code.  Such discharge shall, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, (i) void any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of any Debtor or Reorganized Debtor with respect to any Claim discharged under this Confirmation Order and (ii) operate as a permanent injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such discharged Claim as a personal liability of any Debtor or Reorganized Debtor.

(c)    Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their respective assets, property, or Estates; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and each of the Debtors' liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

29

20.   <u>Releases and Exculpation</u>.  The releases and exculpation provisions contained in the Plan, including, but not limited to, those provided in <u>Article X</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein.

21.   <u>Injunctions</u>.  The injunctions contained in the Plan, including, but not limited to, those provided in <u>Article X.G</u> of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein.  Except as otherwise expressly provided in the Plan or this Confirmation Order, from and after the Effective Date, and without limiting or altering Section 524(a) of the Bankruptcy Code, all Persons and Entities are, to the fullest extent provided under applicable law, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding, (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order, (iii) creating, perfecting, or enforcing any lien or encumbrance, (iv) asserting a setoff or right of subrogation of any kind, or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Equity Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled or discharged or to be discharged pursuant to the Plan or this Confirmation Order against any of the Debtors, the Reorganized Debtors, or any other Person or Entity so released, discharged, settled, or exculpated (or, in each case, against their respective assets or property).  All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

NY\5922797.11RLF1 9422626v.2

22.    Plan Indemnity.  In addition to the matters set forth in the Plan and not by way of limitation thereof, the Reorganized Debtors and the Investor shall, and the Debtors shall continue to, indemnify and hold harmless all Persons who are or were managers, officers or directors of any of the Debtors at any time on or after the Petition Date on account of and with respect to any Claims (whether or not any Proof of Claim or cure claim has been Filed with respect thereto) or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities threatened or asserted by any Person against any such managers, officers or directors with respect to or based upon, in whole or in part, any act taken or omitted to be taken, or alleged act taken or omitted to be taken, in such capacities on or prior to the Effective Date, irrespective of whether such amounts are owed in connection with a prepetition or postpetition act or omission, but in each case only to the extent that (a) the acts, omissions or alleged acts or omissions of such applicable Person were indemnifiable under the Debtors' prepetition organizational documents and (b) the otherwise indemnifiable expense, liability, loss, or other amount is determined not to be covered under the D&O Tail Policy purchased by the Debtors prior to the Petition Date.  The Debtors are further authorized to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Tail Policy, in each case without further notice to, hearing before, approval from, or order of this Court.

23.    Contracts and Leases.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts and Unexpired Leases as set forth within the Plan, the Plan Supplement, this Confirmation Order or otherwise.

31

All of the Executory Contracts and Unexpired Leases of the Debtors are hereby assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, with such assumption effective as of, and subject to the occurrence of, the Effective Date, except for those Executory Contracts and Unexpired Leases that (i) have been previously assumed or rejected by order of this Court, (ii) are the subject of a motion to assume or reject pending on the Effective Date, (iii) are identified on Plan Schedule 5, (iv) are rejected pursuant to the terms of the Plan or this Confirmation Order, or (v) previously expired or terminated pursuant to their own respective terms (subject to such exclusions, collectively, the "**Assumed Contracts**").    The Debtors have provided sufficient notice to each non-Debtor counter-party to the Executory Contracts and Unexpired Leases of the assumptions or rejections described in the Plan or the Plan Supplement.    The Debtors have also provided adequate assurances of future performance, as that term is used in section 365 of the Bankruptcy Code, with respect to the assumption of any Executory Contract or Unexpired Lease that is to be assumed pursuant to the Plan.    To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assumption and assignment (as applicable) or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases, (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the

32

Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan. The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by an order of this Court, which has not been assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its respective terms and conditions, except as limited or modified by the provisions of the Plan.

24.    <u>Approval of Assumed Contracts</u>.

(a)    <u>Court Approval</u>. The Debtors' assumption of the Assumed Contracts is hereby approved pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Assumed Contracts shall remain in full force and effect in accordance with their respective terms and conditions for the benefit of the Reorganized Debtors, notwithstanding any provision in such Assumed Contract (including, without limitation, those described in sections 365(b), (c), (e) and (f) of the Bankruptcy Code) or under applicable non-bankruptcy law that purports to (a) terminate, modify, or restrict, or permit the applicable non-Debtor party to terminate, modify or restrict, such contract or lease or the Debtors' rights, benefits and privileges thereunder; or (b) create or impose, or permit the applicable non-Debtor party to create or impose, any additional duties, obligations, penalties, default rates of interest or payments (monetary and non-monetary) upon any Debtor or Reorganized Debtor, in each case as a result of or in connection

33

with (i) the filing of a petition for relief under Chapter 11 of the Bankruptcy Code by the Debtors; (ii) the Debtors' insolvency or financial condition at any time before the Chapter 11 Cases are closed; or (iii) the Confirmation or Consummation of the Plan.

        (b)     <u>Cure Disputes</u>. Any counterparty to an Assumed Contract that failed to object timely to the proposed assumption or cure amount is hereby deemed to have assented to such matters and is deemed to have forever released and waived any objection to the proposed assumption and cure amount. The amounts, if any, due by the Debtors pursuant to each Assumed Contract that are required to be paid as cure under section 365 of the Bankruptcy Code shall be satisfied by payment of such amount in Cash on the Effective Date, or as soon thereafter as is practicable, or on such other terms as the parties to such Assumed Contract may otherwise agree in writing. In the event of a dispute regarding the amount and timing of any cure payments, the Debtors and applicable non-Debtor parties shall promptly confer after the Effective Date to attempt to resolve any such dispute consensually without further order of this Court. In the event such dispute cannot be resolved consensually by the applicable parties, then the Reorganized Debtors shall, within thirty (30) days after the Effective Date, file a notice of dispute with this Court (and promptly serve such notice on the applicable counter-party) and such dispute shall be set for a status conference at the next scheduled omnibus hearing in these Chapter 11 Cases, with subsequent evidentiary hearings to be established by this Court as and if necessary. The payments, if any, or other actions, if any, that this Court determines the Debtors are required to pay or otherwise perform to assume the applicable Assumed Contract pursuant to section 365(b)(1) of the Bankruptcy Code shall be promptly paid or undertaken as required by Final Order resolving the applicable dispute. If an objection to the proposed cure amount is

sustained by Final Order of this Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it by filing written notice thereof with this Court, and serving such notice on the applicable counter-party, within ten (10) days of the entry of such Final Order.

(c)    Full Release and Satisfaction of Claims.  Subject to any cure claims Filed with respect thereto, assumption of any Assumed Contract pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract at any time prior to the effective date of assumption, in each case as provided in section 365 of the Bankruptcy Code.  Any Proofs of Claim filed with respect to an Assumed Contract that has been assumed by Final Order shall be deemed disallowed and expunged (subject to any cure claims Filed with respect thereto), without further notice to or action, order, or approval of this Court.

(d) Management Services Agreements.  For the avoidance of doubt, except to the extent such agreements are identified on Plan Schedule 5 or are subject to a motion to reject pending on the Effective Date, the Management Services Agreements assumed pursuant to the terms of the Plan, including, without limitation, that certain Amended and Restated Management Services Agreement by and between Oncure Medical Corp. and Integrated Community Oncology Network, LLC dated as of May 1, 2012 and such other Management Services Agreements implicated in or otherwise referenced as "Master Services Agreements" in the Amended Adversary Complaint for Declaratory Relief captioned Travers McLoughlin, et al. v. OnCure Holdings Inc., et al., filed in Adv. No. 13-51318 (KG) at D.I. 3 on July 25, 2013 (the

"**Adversary Complaint**"), are Assumed Contracts under the terms of the Plan and this Confirmation Order and shall be subject to all of the rights, protections and obligations set forth in the Plan and this Confirmation Order.  The terms of such Management Services Agreements shall accordingly remain in full force and effect following entry of this Confirmation Order and shall inure to the benefit of the Reorganized Debtors notwithstanding anything alleged in the Adversary Complaint or elsewhere.  To the extent the Adversary Complaint challenges the Debtors or the Reorganized Debtors' ability to enforce the Management Services Agreements or any provision thereof, that claim is rejected and dismissed with prejudice.

25.    <u>Approval of Rejection of Rejected Contracts</u>.  All of the Executory Contracts and Unexpired Leases of the Debtors that are identified on <u>Plan Schedule 5</u>, or that are otherwise rejected pursuant to the terms of the Plan or this Confirmation Order (collectively, the "**Rejected Contracts**"), are rejected by the Debtors and such rejection is hereby approved by this Court pursuant to sections 365(a) and 1123 of the Bankruptcy Code, with such rejection effective as of, and subject to the occurrence of, the Effective Date (the "**Rejection Date**"); <u>provided</u> that, with respect to the rejection of any unexpired lease of non-residential real property, such Rejection Date shall occur on the later of (i) the Effective Date and (ii) the date on which the Debtors have vacated the applicable leased premises.  Rejection of any Rejected Contract pursuant to the Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Rejected Contract.  All Proofs of Claim with respect to Claims arising from or in connection with the Rejected Contracts, if any, must be filed with this Court within thirty (30) days after the Rejection Date (such Claims, the "**Rejection Claims**").  Any and all Rejection Claims not filed within such time will, without any

36

further notice to or action of any Person, be forever barred from assertion against the Debtors or Reorganized Debtors, their Estates, or property unless otherwise ordered by this Court or provided for in the Plan. All Rejection Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan and this Confirmation Order. At any time prior to the Effective Date, and without altering or limiting the other provisions of the Plan or this Confirmation Order, the Debtors may seek to (i) reject any contract or lease to which any Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease and (ii) remove any contract or lease to which any Debtor is a party from Plan Schedule 5 and thereafter file a motion requesting authorization to assume any such contract or lease.

26.    <u>Corporate Action</u>

(a)    Each of the Debtors and the Reorganized Debtors may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the consummation of the transactions contemplated by the Investment Agreement, the issuance and the distribution of the Plan Securities and Documents to be issued pursuant thereto, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors or by any other Person (except for those expressly required pursuant to the Plan, this Confirmation Order, or the Restructuring Documents).

(b)     Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, officers, managers, members or partners of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, officers, managers, members or partners of the Debtors or the Reorganized Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

(c)     As of the Effective Date, all matters provided for in the Plan involving the legal or corporate structure of the Debtors or the Reorganized Debtors (including, without limitation, the adoption of the Amended/New Organization Documents and similar constituent and organizational documents, and the selection of directors and officers for, each of the Reorganized Debtors), and any legal or corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the stockholders, directors, officers, managers, members or partners of the Debtors or the Reorganized Debtors or by any other Person.

(d)     On and after the Effective Date, the appropriate officers of the Debtors and the Reorganized Debtors are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges,

38

consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtors and the Reorganized Debtors, in each case in form and substance satisfactory to the Investor, and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  The secretary and any assistant secretary of the Debtors and the Reorganized Debtors shall be authorized to certify or attest to any of the foregoing actions.

27.    Authority to Act.  Each Debtor and Reorganized Debtor and their respective officers and directors, are authorized and empowered pursuant to Section 303 of the Delaware General Corporation Law and other applicable corporation, limited liability company and limited partnership laws, to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, in each case without any requirement of further vote, consent, approval, authorization or other action by the stockholders, security holders, officers, directors, partners, managers, members or other applicable owners or notice to, order of, or hearing before this Court.  Each federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

28.    Exemption From Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, this Confirmation Order or the Restructuring Documents shall not be subject to any Stamp or Similar Tax or

39

governmental assessment in the United States, and this Court hereby directs the appropriate

federal, state or local governmental officials or agents to forgo the collection of any such Stamp

or Similar Tax or governmental assessment and to accept for filing and recordation instruments

or other documents evidencing such action or event without the payment of any such Stamp or

Similar Tax or governmental assessment.    Such exemption specifically applies, without

limitation, to (i) all actions, agreements and documents necessary to evidence and implement the

provisions of, transactions contemplated by and the distributions to be made under the Plan, this

Confirmation Order or the Restructuring Documents, (ii) the issuance of the New Common

Stock and (iii) the attachment, perfection, maintenance, or creation of security interests or any

Lien as contemplated by the Plan or the Restructuring Documents.

      29.    <u>Bar Date for Administrative Claims</u>.  Except as otherwise provided herein, in the

Plan, or under section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid,

requests for payment of Administrative Claims must be Filed with this Court and served on the

Reorganized Debtors pursuant to the procedures specified in the notice of the Effective Date of

the Plan, substantially in the form attached hereto as <u>Exhibit 2</u> (the "**Notice of Effective Date**"),

by no later than the Business Day which is thirty (30) days after the Effective Date, or such other

date as approved by Final Order of this Court (the "**Administrative Claims Bar Date**").

Holders of Administrative Claims that are required to File and serve a request for payment of

such Administrative Claims that do not File and serve such a request by the Administrative

Claims Bar Date shall be forever barred, estopped and enjoined from asserting such

Administrative Claims against the Debtors or the Reorganized Debtors or their Estates and

property and such Administrative Claims shall be deemed discharged as of the Effective Date

without further notice to or action, order, or approval of this Court. All Administrative Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan and this Confirmation Order. Any objections to such requests for payment of Administrative Claims must be Filed with this Court and served on the Reorganized Debtors and the requesting party by the later of (a) one hundred twenty (120) days after the Effective Date and (b) sixty (60) days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of this Court.

       30.    <u>Professional Fee Claims</u>.

       (a)    <u>Professional Fees Bar Date</u>. The Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File with this Court and serve on the Reorganized Debtors and such other Entities designed by this Confirmation Order an application for final allowance of such Professional Fee Claim (each a "**Final Fee Application**") by no later than the Business Day that is forty-five (45) days after the Effective Date, or such other date as approved by order of this Court (the "**Professional Fees Bar Date**"); <u>provided</u> that the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to, hearing before or order of this Court; <u>provided, further</u>, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses from the Debtors' Claim Portion Cash Reserve for services rendered before the Effective Date, without further Court order, pursuant to the

41

Ordinary Course Professionals Order. Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash from the Professional Fee Reserve within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim.

(b) Service of Final Fee Applications. All Final Fee Applications of Professionals shall be filed with this Court and actually served on or prior to the Professional Fees Bar Date upon the following parties (collectively, the "**Notice Parties**"): (i) OnCure Holdings, Inc., 188 Inverness Drive West, Suite 650 Englewood, Colorado, 80112 (Attn: Bradford C. Burkett); (ii) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: Annemarie V. Reilly, Esq.); (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Daniel J. DeFranceschi, Esq.); (iv) Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004 (Attn: John R. Ashmead); (v) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Jayme T. Goldstein, Esq.) and 2029 Century Park East, Los Angeles, California 90067 (Attn: Frank A. Merola, Esq.); (vi) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq. and Matthew B. Lunn, Esq.); and (vii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder).

(c) Objections to and Hearing to Approve Final Fee Applications. Any objection to any Final Fee Application must be Filed with this Court, together with proof of service thereof, and served upon the applicable Professional and the other Notice Parties, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Filing of the applicable Final Fee Application (the "**Professional Fees**

42

**Objection Deadline**"). Only those objections made in writing and timely filed and received by the Professional Fees Objection Deadline will be considered by this Court. If no objection to a Final Fee Application is timely filed and served in accordance with the procedures set forth herein, then this Court may enter a Final Order approving such uncontested Final Fee Application without further notice and the Debtors or the Reorganized Debtors, as applicable may pay the amounts described in such uncontested Final Fee Application (or if any final fee application is the subject of an objection, the Debtors or the Reorganized Debtors, as applicable, may pay the undisputed amounts described in such Final Fee Application). The hearing to consider approval of the Final Fee Applications, if necessary, will be held as soon as reasonably practicable after the expiration of the Professional Fees Objection Deadline and the date of such hearing will be promptly provided to the applicable Professional and Notice Parties and posted on the Debtors' restructuring website.

31.    <u>Funding and Use of Cash Reserves</u>.

(a)    On or before the Effective Date, the Debtors shall fund the Cash Reserves in such amount as determined by the Debtors, with the consent of the Supermajority Consenting Debtholders or as determined by order of this Court, as necessary in order to be able to pay in full in Cash the obligations and liabilities for which such reserves were established, including, without limitation, reserving an amount of Cash equal to 100% of distributions to which Holders of Disputed Claims in each such applicable Class would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims in their respective Face Amount (or based on the Debtors' books and records if the applicable Holder has not yet Filed a Proof of Claim and the Claims Bar Date has not yet expired); provided, however, that the Debtors and the

43

Reorganized Debtors, as applicable, shall have the right to file a motion seeking to estimate any Disputed Claims, subject to the rights of the Noteholders' Representative contained in <u>Article V.T</u> of the Plan; <u>provided</u>, <u>further</u>, that the Debtors shall provide the Investor with information regarding the Cash Reserves as may be reasonably requested by the Investor.

(b)    The Cash contained in each applicable Cash Reserve shall be first used solely to pay the obligations and liabilities for which such applicable reserve was established, with any excess funds (if any) in an applicable Cash Reserve being next available to pay the obligations and liabilities for which any other Cash Reserve was established. The Debtors and the Reorganized Debtors, as applicable, shall maintain detailed records of all payments made from each Cash Reserve, such that all payments and transactions shall be adequately and promptly documented in, and readily ascertainable from, their respective books and records. After the Effective Date, neither the Debtors nor the Reorganized Debtors shall deposit any other funds or property into the Cash Reserves without further order of this Court or otherwise commingle funds in the Cash Reserves.

32.    <u>Distributions Under the Plan</u>. All distributions under the Plan shall be made in accordance with <u>Article VII</u> of the Plan.

33.    <u>Resolution of Contingent, Unliquidated and Disputed Claims</u>. Except as otherwise ordered by this Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in accordance with the terms of this Confirmation Order and the Plan, including, without limitation, <u>Article VIII</u> of the Plan.

34.    <u>No Distributions Pending Allowance</u>. Notwithstanding any other provision of the Plan or this Confirmation Order to the contrary, no payments or distributions of any kind or

44

nature shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim pursuant to a Final Order.

35.    No Postpetition Interest on Claims.  Unless otherwise specifically provided for in the Plan, this Confirmation Order, or Final Order of this Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

36.    Reserve for Disputed Claims.  The Debtors, the Reorganized Debtors and the Distribution Agent, as applicable, shall establish such appropriate reserves for Disputed Claims in Classes as it determines necessary and appropriate, including, without limitation, as part of the Cash Reserves, in each case with the consent of the Noteholders' Representative or as approved by order of this Court.  Without limiting the foregoing, reserves for Disputed Claims shall equal an amount of Cash equal to 100% of distributions to which Holders of such Disputed Claims in each applicable Class would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims in their respective Face Amount (or based on the Debtors' books and records if the applicable Holder has not yet Filed a Proof of Claim and the Claims Bar Date has not yet expired); provided, however, that the Debtors and the Reorganized Debtors, as applicable, shall have the right to file a motion seeking to estimate any Disputed Claims, subject to the rights of the Noteholders' Representative contained in Article V.T of the Plan; provided,

45

<u>further</u>, that the Debtors shall provide the Investor with information regarding the reserves established for Disputed Claims as may be reasonably requested by Investor.

37.    <u>Payment of Statutory Fees; Post-Effective Date Professional Fees and Expenses</u>. All outstanding fees payable pursuant to section 1930 of title 28, United States Code shall be paid when due.  The Reorganized Debtors shall pay the charges that they incur after the Effective Date for Professionals' fees, disbursements, expenses, or related support services (including reasonable fees and expenses relating to the preparation of final fee applications) in the ordinary course of business and without application or notice to, or order of, this Court, including, without limitation, fees, costs and expenses incurred in connection with the implementation, enforcement and Consummation of the Plan, including but not limited to the reasonable fees and expenses of the Distribution Agents.

38.    <u>Payment of Fees and Expenses of Prepetition Term Loan Agent and Ad Hoc Secured Noteholders Committee</u>.  Without limiting the terms or conditions of Section 3.3(f) of the Investment Agreement, the Debtors shall, on the Effective Date and to the extent invoiced, pay the Prepetition Term Loan Agent Fees and Expenses and the Ad Hoc Secured Noteholders Committee Fees and Expenses (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without application by any such parties to this Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise.  If the Debtors or the Reorganized Debtors and any such Entity cannot agree with respect to the reasonableness of the fees and expenses to be paid to such party, the reasonableness of any such fees and expenses shall be determined by this Court (with any undisputed amounts incurred prior to the Effective Date to be paid by the Debtors on the

NY\5922797.11RLF1 9422626v.2

Effective Date and any disputed amounts incurred prior to the Effective Date to be escrowed by the Debtors).

39.    <u>Payment of Fees and Expenses of Indenture Trustee</u>.  Without limiting the terms or conditions of Section 3.3(f) of the Investment Agreement, the Debtors shall, on the Effective Date and to the extent invoiced, pay the Prepetition Secured Notes Indenture Trustee Fees and Expenses (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without the need to provide individual time records or application by any such parties to this Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise; <u>provided</u>, <u>however</u>, if the Debtors or Reorganized Debtors and any such Entity cannot agree with respect to the reasonableness of the fees and expenses to be paid to such party, the Debtors shall (i) pay the undisputed portion of any invoices submitted on or before the Effective Date, (ii) place any disputed amounts in escrow on the Effective Date, and (iii) notify the Prepetition Secured Notes Indenture Trustee of any dispute within ten (10) days after the presentation of an invoice by the Prepetition Secured Notes Indenture Trustee.  Upon such notification, the Prepetition Secured Notes Indenture Trustee may assert the Trustee Charging Lien to pay the undisputed and unpaid portion of the Prepetition Secured Notes Indenture Trustee Fees and Expenses, and/or after the parties have attempted in good faith to resolve any such dispute for at least fifteen (15) days after the notification of the dispute, may submit such dispute for resolution to this Court; <u>provided</u>, <u>however</u>, that this Court's review shall be limited to a determination under the reasonableness standard in accordance with the Prepetition Secured Notes Indenture.  Nothing in the Plan or in this Confirmation Order shall be deemed to impair, waive, discharge, or negatively affect any Trustee

47

Charging Lien for any fees, costs and expenses not paid pursuant to the Plan and otherwise claimed by the Prepetition Secured Notes Indenture Trustee pursuant to Article V.V of the Plan, this Confirmation Order and in accordance with the Prepetition Secured Notes Indenture. For the avoidance of doubt, the Trustee Charging Lien shall be released as and when required under the Prepetition Secured Notes Indenture and the Amended Secured Notes Indenture.

40.    Termination of the Old HoldCo Interests.    On and as of the Effective Date, the Old HoldCo Interests shall be terminated, cancelled and extinguished.

41.    Notice of Confirmed Plan.    In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), as soon as reasonably practicable after the Confirmation Date, the Debtors shall serve a notice of entry of this Confirmation Order, substantially in the form attached hereto as Exhibit 3 (the "**Notice of Confirmed Plan**") by first-class mail, postage prepaid on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; provided, however, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address. The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required. The Notice of Confirmed Plan shall have the effect of an order of this Court, shall constitute sufficient notice of the entry of the Confirmation Order to

NY\5922797.11RLF1 9422626v.2

such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

42.    <u>No Liability for Solicitation</u>.  Based on the factual findings described in this Confirmation Order, the Debtors, the Reorganized Debtors and each of their respective Related Persons are not, and on account of or with respect to the offer, issuance, sale, or purchase of any security under the Plan, and/or solicitation of votes on the Plan, will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution, offer, issuance, sale, or purchase of any securities, including, without limitation, the applicable Plan Securities and Documents, under the Plan, the Investment Agreement or the Escrowed Notes Agreement.  The Debtors, the Reorganized Debtors and each of their respective Related Persons have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations and are, therefore, entitled to, and are hereby granted, the protections afforded by section 1125(e) of the Bankruptcy Code.

43.    <u>Payment Approval</u>.  The payments contemplated by the Completion Bonus Program are reasonable under the circumstances.  Accordingly, on and after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to make the payments contemplated thereby pursuant to section 1129(a)(4) of the Bankruptcy Code, without further notice and hearing or consent of any Person.

44.    <u>Substantial Consummation</u>.  "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to have occurred on the Effective Date.

49

45.     <u>Estimation Proceedings and Other Rights</u>.  Any and all rights of the Debtors and Reorganized Debtors under section 502(c) and section 502(e) of the Bankruptcy Code are reserved.

46.     <u>Reversal or Modification of Confirmation Order</u>.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court, or any other court of competent jurisdiction, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay, modification or vacatur.  Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act, obligation, indebtedness, liability, priority or Lien incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Confirmation Order and the Plan, or any amendments or modifications thereto, in each case in effect immediately prior to the date that the Debtors or the Reorganized Debtors received such actual written notice.

47.     <u>Failure to Consummate Plan</u>.  If the Confirmation or the Consummation of the Plan does not occur with respect to one or more of the Debtors, then the Plan shall, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in the Plan, the Disclosure Statement or this Confirmation Order shall: (1) constitute a waiver or

50

release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any

manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of

any Claim or Equity Interest; or (4) constitute an admission, acknowledgment, offer or

undertaking by the Debtors, any Holders or any other Entity in any respect.

48.    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Entity named

or referred to in the Plan or this Confirmation Order shall be binding on, and shall inure to the

benefit, of any heir, executor, administrator, successor or assign of each such Entity.

49.    <u>No Successors In Interest</u>.  Except as to obligations expressly assumed pursuant to

the Plan, the Reorganized Debtors shall not be deemed to be successors to the Debtors and shall

not assume, nor be deemed to assume, or in any way be responsible for, any successor liability or

similar liability with respect to the Debtors or the Debtors' operations that are not expressly

assumed or reinstated in connection with, or expressly provided by, the Plan or this Confirmation

Order.

50.    <u>Return of Deposits</u>.  Notwithstanding anything to the contrary in the Plan or in an

order previously entered by this Court, all adequate assurance deposits provided by the Debtors

to utility providers pursuant to the *Final Order Under 11 U.S.C. §§ 105(a) and 366 (I)*

*Prohibiting Utility Companies from Altering or Discontinuing Service on Account of Prepetition*

*Invoices, (II) Approving Deposit as Adequate Assurance of Payment, and (III) Establishing*

*Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment*

[Docket No. 169] shall be returned to the Reorganized Debtors within ten (10) Business Days of

the applicable utility receiving written notice of the occurrence of the Effective Date.

51

51.    <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising under, arising in, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in <u>Article XI</u> of the Plan. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order.

52.    <u>Headings</u>.  The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

53.    <u>Existing Board of Directors</u>.  The existing boards of directors and other governing bodies of the Debtors will be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.

54.    <u>References to Plan Provisions</u>.  The failure specifically to include or reference any particular article, section or provision of the Plan (and the Plan Supplement) or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto) be confirmed and any related documents be approved in their entirety and incorporated herein by reference.

55.    <u>No Admission or Waiver</u>.  None of the filing of the Plan, any statement or provision contained within the Plan or the taking of any action by any Debtor with respect to the

52

Plan (and Plan Supplement), the Disclosure Statement or Confirmation Order shall be or shall be deemed to be an admission or wavier of any rights of any Debtor with respect to the holders of Claims or Equity Interests prior to the Effective Date.

56. <u>Confirmation Order Controlling</u>.    The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided, however</u>, that if there is any conflict or inconsistency between the Plan and this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the terms of this Confirmation Order shall control and govern.

57. <u>Immediate Effectiveness of this Confirmation Order</u>.    Pursuant to Bankruptcy Rule 3020(e), the fourteen day stay of this Confirmation Order imposed thereby is waived and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order upon the docket and upon the satisfaction or waiver of the conditions set forth in <u>Article IX</u> of the Plan.

58. <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

59. <u>Objection of Centers for Medicare and Medicaid Services</u>. Notwithstanding anything to the contrary in the Plan, this Confirmation Order or any implementing Plan documents (collectively, "**Documents**"), the Debtors, Reorganized Holdco and the Investor shall comply with all non-bankruptcy law and shall not assume and assign any contract, agreement, license, permit or easement to which the Centers for Medicare and Medicaid Services ("**CMS**") is a party, nor shall the Documents effect any purported transfer thereof or set any cure amount, unless and until CMS, if appropriate, consents to the assignment.  All rights of recoupment and

53

setoff, if any, of the United States are unaffected by the Documents and are fully preserved.  The Administrative Claims Bar Date set forth in the Plan shall not apply to the CMS claims.

NY\5922797.11RLF1 9422626v.2

60.    <u>Objection of Simi Valley</u>.

(a)    Debtor U.S. Cancer Care, Inc. ("**Debtor USCC**") shall be, and hereby is, authorized to assume that certain Amended and Restated Operating Agreement for Simi Valley Cancer Center Management LLC A California Limited Liability Company, effective as of December 1, 2011 (the "**Operating Agreement**").

(b)    Notwithstanding anything to the contrary in this Confirmation Order, the Proof of Claim of Simi Valley Hospital & Health Care Services, a California nonprofit religious corporation, d/b/a Simi Valley Hospital (the "**Hospital**"), assigned Claim No. 268, shall be and hereby is deemed Allowed within the meaning of Article VIII of the Plan as an unsecured claim. On the Effective Date, the Debtors shall be authorized to pay the Hospital the amount of $20,000 in Cash, constituting the agreed upon "cure amount" due the Hospital under Article VI of the Plan.

NY\5922797.11RLF1 9422626v.2

61.    <u>Section 365(d)(4) Extension Motion</u>. On October 3, 2013, the Debtors filed that certain *Debtors' Motion for Order Extending Time to Assume or Reject Unexpired Leases of Non-Residential Real Property* [Docket No. 374] (the "**365(d)(4) Extension Motion**"), which is currently scheduled for hearing on November 7, 2013. Pending this Court's ruling on the 365(d)(4) Extension Motion, the Unexpired Leases shall be treated in accordance with the Plan and no Unexpired Lease shall be deemed rejected pursuant to Section 365(d)(4)(A) of the Bankruptcy Code.

Dated: October **3**, 2013
      Wilmington, DE

                                    THE HONORABLE KEVIN GROSS
                                    CHIEF UNITED STATES BANKRUPTCY JUDGE

NY\5922797.11RLF1 9422626v.2